1  McNICHOLAS & McNICHOLAS LLP
2  Matthew S. McNicholas (SBN 190249)
   Cameron Fredman (SBN 256034)
3  10866 Wilshire Boulevard, Suite 1400
   Los Angeles, CA 90024
4  Tel. (310) 474-1582
   Fax: (310) 475-7871
5  Attorneys for Plaintiff,
6  Leonard Avila

7

8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12                              CV11-01326 MRP(RJKx)

13  LEONARD AVILA,                  CASE NO.

14            Plaintiff,

15       vs.

16  LOS ANGELES POLICE              **COMPLAINT**
    DEPARTMENT, CITY OF LOS
17  ANGELES, COMMANDER STUART       1. **Estoppel**
    MAISLIN, and DOES 1 through 25, 2. **Retaliation in Violation of the**
18  inclusive,                         **Fair Labor Standards Act;**
19            Defendants.           3. **Violation of Due Process (42**
                                       **U.S.C. § 1983)**
20                                  4. **Fraud / Concealment**
21                                  5. **Negligent Misrepresentations**

22

23                                  **DEMAND FOR JURY TRIAL**

24

25

26       Plaintiff Leonard Avila ("Avila") demands a trial by jury and based on

27  information and belief complains and alleges as follows:

28

McNICHOLAS & McNICHOLAS, LLP
10866 WILSHIRE BLVD, SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582  FAX: (310) 475-7871

## THE PARTIES

1.     Plaintiff Leonard Avila is an individual residing in Los Angeles County, State of California and was a sworn LAPD officer.

2.     Defendant Los Angeles Police Department ("LAPD") is a municipal agency existing by virtue of the laws of the State of California.

3.     Defendant City of Los Angeles ("City") is a municipal corporation organized as a charter law city and existing by virtue of the laws of the State of California.

4.     Chief William Bratton ("Bratton") was, at all relevant times, employed as the Chief of the LAPD and a member of the Board of Police Commissioners, and held other positions within the City.  In conjunction with his employment and positions within the City, Bratton had the authority and responsibility of setting and implementing the official policies and customs of the LAPD (written and unwritten), including, but not limited to, the LAPD policies with respect to the investigation of, and retaliation against, employees who opposed unlawful employment practices and/or made charges, testified, assisted, or otherwise participated in any investigation, proceeding, and/or hearing (*i.e.*, "protected activity") of employee claims brought pursuant to the Fair Labor Standards Act, 29 U.S.C.§§ 201-219 (the "FLSA").  In conjunction with his employment and position with the City, Bratton was further delegated with the ultimate authority and responsibility of training, supervisory and disciplinary

1

1  functions of the LAPD, and at all relevant times herein was acting in the course

2  and scope of his employment and under color of law.   Bratton directly

3

4  participated in the decisions of how to treat Avila after he engaged in protected

5  activity by testifying in *Maciel*, which decisions resulted in the conducted alleged

6

7  herein.

8         5.   Commander Stuart Maislin ("Maislin") is, and at all relevant times

9  was, the Commanding Officer of the Risk Management Unit of the LAPD and

10
   was delegated with the authority and responsibility of setting, implementing, and
11

12  enforcing the policies and customs of the LAPD (written or unwritten), including

13  but not limited to, the LAPD policies with respect to the investigation of, and

14
   retaliation against, employees who opposed unlawful employment practices
15

16  and/or made charges, testified, assisted, or otherwise participated in any

17  investigation, proceeding, and/or hearing (*i.e.*, "protected activity") of employee

18
   claims brought pursuant to the FLSA.   At all relevant times herein was acting in
19

20  the course and scope of his employment and under color of law.   Maislin directly

21  participated in the decisions of how to treat Avila after he engaged in protected

22
   activity by testifying in *Maciel*, which decisions resulted in the conducted alleged
23

24  herein.

25         6.   Gerald Chaleff is, and at all relevant times was, a civilian employee

26  of the LAPD with the sworn-equivalent rank of Deputy Chief, and was
27

28  Commanding Officer of the Consent Decree Bureau and Risk Management

MCNICHOLAS & MCNICHOLAS, LLP
10866 WILSHIRE BLVD., SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582  FAX: (310) 475-7871

2

Division.   At all relevant times he was delegated with the authority and responsibility of overseeing the operations of the Risk Management Division and Consent Decree Bureau, and directly participated in the decisions of how to treat Avila after he engaged in protected activity by testifying in *Maciel*, which decisions resulted in the conducted alleged herein.

7.    Plaintiff does not know the true names and capacities of the Defendants identified herein as DOES 1 through 100, inclusive, and therefore identifies these Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the acts and occurrences herein alleged, whether such acts and occurrences were committed intentionally, negligently, recklessly, or otherwise, and that each said DOE Defendant is liable to plaintiff for the damages claimed herein.

8.    At all times herein mentioned, each Defendant was the agent, servant and employee of each of the remaining Defendants, and in doing the things hereinafter mentioned, each Defendant was acting within the course and scope of their employment and authority as such agent, servant and employee and with the consent of their co-Defendants.  The conduct of each Defendant combined and cooperated with the conduct of each of the remaining Defendants so as to cause the incidents and the resulting injuries and damages to plaintiff described in this

COMPLAINT

1    Claim.   All Defendants, and each of them, were civil co-conspirators in the

2    actions alleged herein against plaintiff Avila

3        9.    Defendant City and LAPD are entities subject to suit under the

4    FLSA as employers who regularly employ five or more persons.

### JURIDICTION

5        10.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §

6    1331 (federal question jurisdiction), in that the matter arises under federal law,

7    including the Fair Labor Standards Act (29 U.S.C. §§ 201 *et seq.*) and 42 U.S.C.

8    § 1983.

### FACTS COMMON TO ALL CAUSES OF ACTION

**A.    Officer Leonard Avila**

9        11.   Avila was at all relevant times a sworn peace officer employed with

10   the LAPD.

11       12.   Avila was continuously employed with the City as a police officer

12   with the LAPD since approximately 1998.  At all times herein mentioned, Avila

13   was qualified for the position of a police officer by reason of his education and

14   training.

15       13.   During the course of his employment with the City, Avila performed

16   his various responsibilities in an exemplary fashion and otherwise capably

17   performed each and every condition of his employment agreement.

14. Prior to joining the LAPD, Avila was a Police Officer with the Metropolitan Transit Authority. He applied for, and was accepted to, the Los Angeles Police Academy as a lateral transfer in November 1997. He graduated from the LAPD Academy with the rank of Police Officer II.

15. After successfully completing his probationary period at Transit Division, Avila was assigned to Central Division Patrol beginning in 2000 and continuing up to and including October 2008.

16. From November 2000 up to and including October 2008, Avila remained an active, commended member of Central Division and held the rank of Police Officer II. All of his ensuing performance evaluations were positive and Avila received commendations from both private citizens and the City of Los Angeles Police Department for his outstanding contributions and achievements in the LAPD.

**B.     LAPD "Code 7" and Overtime Policy**

17. Pursuant to the policy and custom of the LAPD, Avila regularly prepared written Daily Field Activity Reports ("DFARs") that documented, among other things, his basic daily activities including, but not limited to, his start of watch, his end of watch, his "Code 7" (*i.e.*, lunch break), and other incidents related to his employment as an LAPD officer. Pursuant to this policy, the DFAR acted like a daily time sheet where Avila recorded his police-related activities

MCNICHOLAS & MCNICHOLAS, LLP
10866 WILSHIRE BLVD, SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582  FAX: (310) 475-7871.

throughout the day.  Concerning Code 7, a given officer's DFAR would reflect whether an officer took his "lunch" or not.  Meaning, if Avila failed to take Code-7, his DFAR would reflect no entry for Code 7, or would affirmatively indicate "no Code 7."  Pursuant to the custom and policy of the LAPD, the Daily Field Activity Reports were submitted for approval to LAPD supervisors as a "management tool" so that supervisors could see what officers were doing and, among other things, make sure officers were properly taking Code 7 or properly documenting their "request for, and refusal of, Code 7."

18.   On several occasions between 2000 and 2008, Avila submitted Daily Field Activity Reports that did not include any entry for  "Code 7" (i.e., lunch break).

19.   Pursuant to the unwritten custom and policy of the LAPD, Avila was instructed to not submit an overtime request if he missed Code 7.  Avila was taught this unwritten policy and custom during the Academy, during his probationary period, and by all of his various supervisors after he passed through his probationary period.

20.   Beginning in approximately 2000 and continuing up to 2008, Avila followed the unwritten policy and custom in place at the LAPD by foregoing Code 7 and excluding from his Daily Field Activity Reports overtime for periods that did not exceed 60 minutes.  Meaning, if he worked through his lunch and still

completed his total "watch" time, he would not submit an overtime request – because such was the unwritten policy of the LAPD.

21.    In further adherence to the unwritten policy and custom of the LAPD, Avila's supervisors approved the Daily Field Activity Reports, including but not limited to, the Daily Field Activity Reports that indicated he did not take Code and did not submit overtime requests.   LAPD written policy and custom required Avila's supervisors to examine his Daily Field Activity Reports for errors, accuracy and/or mistakes – which included making sure he took Code 7 and properly documented such on his DFARs every day.   After a thorough review of the Daily Field Activity Reports on a daily basis, Avila's supervising sergeants, lieutenants, and captains always accepted and processed them without change.   Not once did a single supervisor tell Avila he should be taking Code 7, he should not work through Code 7, or that he should put in overtime requests when he worked through Code 7.   In fact, he was specifically told that "the way we do it here" is that we work through Code 7 and don't submit overtime requests unless they exceed one-hour.   He was trained "if you got some food to eat, that was lunch – it didn't matter if you were working while you were eating."   This was contrary to FLSA and to written policy, but was the unwritten custom and policy followed by the Department and imposed on Avila.

C.    **Avila's Testimony in *Maciel***

22.    In or about 2006, fellow LAPD Officer Edward Maciel filed a lawsuit in the United States District Court for the Central District of California. In that case, entitled *Edward Maciel v. City of Los Angeles*, Case No. CV 06-00249 RSWL, Officer Maciel alleged that the City and the LAPD violated the FLSA (the "*Maciel* Case").

23.    In or about the first week of January 2008, Avila was served with a subpoena to appear on January 16, 2008, to testify in the *Maciel* Case.

24.    On January 16, 2008, Avila appeared in federal court pursuant to the subpoena and provided testimony in the *Maciel* Case.

25.    Under penalty of perjury, Avila's testified that over the course of his career with the LAPD, it was the unwritten policy, custom, practice, and training of officers to regularly skip their "Code 7."  Further, Avila testified his LAPD supervisors specifically instructed him and other officers not to submit overtime slips for intervals of fewer than 60 minutes, even if he worked through lunch.  He testified this was how he was trained at the Academy, through his probationary period, and throughout his career, and that this was the unwritten custom and practice at the LAPD.  This testimony was in direct support of plaintiff-Maciel's claims under FLSA.

26.    Avila's testimony in the *Maciel* Case constitutes protected activity under the FLSA.

MCNICHOLAS & MCNICHOLAS, LLP
10866 WILSHIRE BLVD., SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582 · FAX: (310) 475-7871

27. On January 26, 2008, while Avila was testifying in the *Maciel* Case, LAPD Detective Bass was in the gallery to monitor the daily goings-on of the Maciel trial. Detective Bass reported directly to Commander Stuart Maislin, the Commanding Officer and Officer-in-Charge of the Risk Management Group.

28. Risk Management Group, among other things, helped "manage" LAPD risk by determining what actions should be taken against officers alleged to have committed violations of LAPD policy and procedure, what discipline should be administered in such situations, and, when lawsuits were filed, which ones should settle and which ones should not. Risk Management and Maislin had active, daily involvement in the *Maciel* case, including whether it was a meritorious case to settle, and monitored the daily evidence from the trial to see who was saying what. To that end, Detective Bass remained in the gallery of the courtroom for the duration of Avila's testimony and throughout the trial.

29. Officer Richard Romney was also subpoenaed to testify, and did testify, in the *Maciel* trial. His testimony was substantially the same as Avila's: Romney was trained that if he worked through Code 7 he should not submit an overtime request, that he indicated routinely on his DFARs that he did not take Code 7 (but rather, worked through them), and his supervisors always approved his DFARs as such without question. Romey testified this was the unwritten custom and policy of the LAPD Detective Bass observed Romney's testimony as well.

9

30.    On the day Avila and Romney testified, Detective Bass phoned Maislin to specifically tell Maislin what Avila and Romney testified about. Maislin then specifically instructed Bass to get a certified copy of the transcript for his review and further action.

31.    On or before January 31, 2008, unbeknownst to Avila and Romney, Commander Maislin obtained a transcript of proceedings of Avila's and Maislin's testimony in the *Maciel* Case.

**D.    Retaliation**

32.    On January 31, 2008, Commander Maislin received the Avila and Romney transcripts from the *Maciel* trial.   In sworn deposition and trial testimony, Maislin admitted that after reading Romney's testimony, he initiated discipline against Romney, and after reading only a part of Avila's testimony in *Maciel*, he initiated discipline against Avila.   These complaints lead to formal Internal Affairs investigations based solely upon Romney's and Avila's sworn testimony in the *Maciel* Case.

33.    In the complaints against Romney and Avila, Maislin specifically cited the testimony given in *Maciel* as the basis for the allegations in the complaints and nothing more.

34.    Once Internal Affairs finished their investigation, a completed typed report and summary was prepared.   However, despite LAPD policy to the

McNICHOLAS & McNICHOLAS, LLP
10866 WILSHIRE BLVD., SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582  FAX: (310) 475-7871

1    contrary, neither Avila nor Romney were ever interviewed.  This was because

2    Defendants did not care what they had to say; Avila and Romney were going to

3    be fired for testifying in *Maciel* and for testifying against the LAPD.

4

5        35.    Pursuant to standard procedure, the completed Internal Affairs

6    investigations were forwarded to Avila's and Romney's respective Captains for

7    their opinions as to what should be done.  The respective Captains recommended

8    only a one-day suspension.  Those recommendations were memorialized on a

9    formal LAPD document pursuant to procedure, and returned to Internal Affairs

10   pursuant to procedure.

11

12

13       36.    Upon receipt of the Captains' recommendations for "one day",

14   Internal Affairs created a document and/or came to the conclusion that there was

15   no misconduct and that there should be no penalty against Romney or Avila, not

16   even the one-day penalty.  Such document and/or opinions were concealed from

17   both Romney and Avila, as well as their counsel (different from current counsel)

18   at the time representing Avila and Romney during the internal administrative

19   proceedings, called a Board of Rights.  Additionally, the information concerning

20   "no misconduct" was never communicated to Avila or Romney, or their counsel

21   at any time.  This was a material fact that should have been disclosed during the

22   administrative proceedings and the investigations, but was not.

23

24

25

26       37.    Defendants then also "rejected" the recommendation from Avila's

27   and Romney's respective Captains of a one-day suspension and ordered them to a

28

McNICHOLAS & McNICHOLAS, LLP
10866 WILSHIRE BLVD., SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582  FAX: (310) 475-7871

11

Board of Rights (the official internal LAPD administrative proceeding for discipline) for termination. This is what Defendants wanted the entire time – to fire Avila and Romney for engaging in protected.

38. So, not only did Defendants reject the one-day suspension that was recommended by the respective Captains, which both Avila and Romney were made aware of, Defendants also concealed from Avila and Romney the existence of the Internal Affairs conclusion/opinion that neither did anything wrong and there should be no penalty. So, while Avila and Romney knew the Captains had recommended a one-day suspension and such was rejected, they never knew that Internal Affairs actually concluded they did nothing wrong and there should be no penalty whatsoever. This was concealing, omitting, and/or improperly failing to disclose a material fact that would have changed the entire internal proceeding and its outcome, i.e., neither Avila nor Romney would have been retaliated against.

39. As a direct consequence of Avila's engaging in protected activity, Defendants, and each of them, harassed Avila and engaged in retaliatory behavior, including, but not limited to, heightened scrutiny of his performance and unwarranted discipline.

40. As a result of engaging in protected activity, and in addition to the above, beginning on or about January 31, 2008, Avila was subjected to numerous adverse employment actions:

12

a. Avila was relieved of duty without pay;

b. Avila was forced to turn in his weapon, badge and identification;

c. Avila was stripped of his police powers;

d. An Internal Affairs complaint and investigation was initiated against Avila as a direct result of the testimony Avila gave in the *Maciel* Case;

e. Avila's Captains recommended a penalty of only a one-day suspension, which was rejected by Defendants so he could be terminated;

f. Internal Affairs, after the Captains recommended a one-day suspension, concluded there was "no misconduct" and no penalty whatsoever should be given – a fact concealed from Avila so that he could be terminated; and

g. Defendants affirmatively acted to move Avila through the discipline proceeding in the fastest way to be terminated all because he testified in *Maciel*.

41.    The severe retaliatory acts were orchestrated against Avila because he spoke out against the unlawful employment practices at the LAPD and in support of the FLSA violations alleged in the *Maciel* Case.  The retaliatory acts and adverse employment actions materially affected the terms, conditions and privileges of Avila's employment.

42.    The Board of Rights to which Defendants sent Avila is a mandatory proceeding at which the parties, *i.e.*, the City and Avila, were represented, presented documentary evidence, called and cross-examined witnesses under

MCNICHOLAS & MCNICHOLAS, LLP
10866 WILSHIRE BLVD., SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582  FAX: (310) 475-7871

13

oath, and argued their respective positions.  The Board of Rights results in a final determination by panel of two Captains and one civilian.

43.     The Board of Rights was directed to examine Avila's conduct with regard to overtime with no time limitation.  This included from the time he was sworn in 1998 until the date he testified in January 2008.  The Captain who ran the Board, Captain Eisenberg, specifically testified to this under oath.  It was not disclosed by Defendants in the original complaint initiated by Maislin, nor during the investigation, nor during the Board of Rights, nor at any time that the only conduct that was supposed to be at issue was *after* 2005.  Maislin testified to this fact under oath for the first time in late 2010, two years after the Board was completed and two years after Avila separated from the Department.  This was a material fact because in his *Maciel* testimony, Avila specifically testified he ceased the conduct at issue (the conduct that Maislin said caused him to initiate the complaint) after 2005.  So, in initiating the complaint, Maislin testified (in 2010) he only intended the complaint to cover post-2005 conduct and based the complaint only on the Maciel transcript, but he and Defendants never  told Avila this, or anyone else.  So Avila never knew that only his post-2005 conduct was at issue, which means Avila could not defend himself with what was undisputed: he never engaged in the alleged conduct after 2005.  However, Defendants wanted this concealed because they wanted him fired for testifying in a FLSA trial.  Had

McNICHOLAS & McNICHOLAS, LLP
10866 WILSHIRE BLVD, SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582  FAX: (310) 475-7871

this been disclosed, the internal discipline proceedings would not have resulted in his termination, or any discipline for that matter.

44.    Additionally, Maislin testified for the first time in 2010 under oath that there were in fact "unwritten exceptions" to the written FLSA policies concerning how Avila and Romney could take their Code 7 or not take them – just as Avila and Romney has testified there was.  However, up to that point, Defendants denied vehemently that there were any unwritten exceptions to the written FLSA policies, and that the written memos circulated in 2001, 2003, and 2005 specifically stated as much.  In fact, in 2005, Chief Bratton went so far as to release a video of himself talking about FLSA issues where he stated, among other things, "there are no unwritten exceptions to the FLSA rules."  Not coincidentally, the script read by Bratton on the video was written by Maislin with Chaleff's assistance and the approval of the Defendants.  The existence of the unwritten exceptions which Maislin testified about in 2010 was actively concealed from Avila and Romney, and everyone else in the LAPD, to suit the Defendants' needs.  Had this information been disclosed, there would have been no complaint, no investigation, no termination, and no retaliation.  This was a material fact that was actively concealed, omitted, and not disclosed.

45.    Thus, there was the intentional or negligent omissions of three material facts from Avila which were caused by Defendants to retaliate against Avila and get him fired.  These three material facts were: (1) Internal Affairs

McNICHOLAS & McNICHOLAS, LLP
10866 WILSHIRE BLVD., SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582  FAX: (310) 475-7871

1   concluded there was no misconduct and that no penalty should be given; (2) there

2   in fact DID exist unwritten exceptions to the written FLSA policy, just as Avila

3

4   had testified there was; and (3) Avila was only supposed to be "investigated" for

5   post-2005 conduct. ("Material Facts")

6

7       E.      **The First *Avila* Case.**

8       46.     On or about April 9, 2009, Plaintiff filed a Complaint in a California

9   Superior Court for the County of Los Angeles, *Leonard Avila v. Chief William*

10

11  *Bratton, et al.*, case number BC411531, alleging retaliation in violation of the

12  Fair Labor Standards Act (FLSA).  On or about April 30, 2009, the matter was

13

14  removed to federal court and assigned the case number 2:09-cv-03053-SJO-FMO.

15      47.     At this point, none of the material facts were known by Avila.

16      48.     It was Plaintiff's understanding, based on numerous representations

17  by Defendants, and each of them, including written memoranda and the text of

18

19  the Complaint against Plaintiff, that his Board of Rights investigation pertained to

20  matters that both predated and postdated 2005.

21      49.     Further, numerous representations by Defendants, and each of them,

22

23  including written memoranda, indicated that there were no unwritten exceptions

24  to the policies governing the taking and documenting of Code 7.

25

26

27

28

McNICHOLAS & McNICHOLAS, LLP
10866 WILSHIRE BLVD., SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582  FAX: (310) 475-7871

16

50.     Further, numerous representations by Defendants, and each of them, including written memoranda, indicated that Avila engaged in misconduct – despite the fact that Internal Affairs found to the contrary

51.     On or about May 19, 2009, based on the representations of the Defendants, as articulated above, and based on the Material Omissions, Plaintiff dismissed *Leonard Avila v. Chief William Bratton, et al.*, case number 2:09-cv-03053-SJO-FMO.  As explained below, this dismissal was induced by fraudulent, negligent, or otherwise improper nondisclosure of the Material Facts.

**A.**     ***Romney v. Chief William Bratton, et al.***

52.     On or about April 9, 2009, Richard Romney, another officer who had similarly testified in the *Maciel* case, filed a Complaint in a California Superior Court for the County of Los Angeles, *Richard Romney v. Chief William Bratton, et al.*, case number BC411532, alleging retaliation in violation of the Fair Labor Standards Act (FLSA).  On or about April 30, 2009, the matter was removed to federal court and assigned the case number 2:09-cv-03048, before Judge Valerie Baker Fairbank.

53.     In sworn deposition testimony and in sworn trial testimony, Defendant Maislin admitted two of the Material Facts (i.e., that there were unwritten exceptions and that the conduct at issue was only supposed to be post-2005) that had not before been revealed to Plaintiff Avila, facts which directly contradicted prior representations Defendants had made to Plaintiff, and facts

McNICHOLAS & McNICHOLAS, LLP
10866 WILSHIRE BLVD., SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582  FAX: (310) 475-7871

17

which, had they been revealed, Plaintiff Avila would not have dismissed his lawsuit.

54.     The matter of *Richard Romney v. Chief William Bratton, et al.*, case number 2:09-cv-03048, resulted in a jury verdict against the Los Angeles Police Department and City of Los Angeles in the amount of roughly $4 million, finding that the conduct toward Romney, which is identical to the conduct toward Avila, was retaliatory under the Fair Labor Standards Act.

55.     Additionally, it was not discovered until after the *Romney* case had reached a final verdict and judgment that Defendants had also fraudulently concealed key documents and/or information related to both Romney and Avila— that the internal affairs investigation into these officers had resulted in conclusions of "no misconduct," and thus that Defendants had actual knowledge that the pretext on which these officers were sent to a Board of Rights and terminated was pretext.  This information was responsive to properly formatted and served discovery, as well as under the federal Rules governing discovery, but was never produced or identified by Defendants in any manner, shape, or form.

56.     Avila lost significant income and benefits as a result of the adverse employment actions taken in retaliation for his engaging in protected activity when he testified to the FLSA violations in the LAPD and in support of Edward Maciel.  He further lost significant income and benefits when he relied to his detriment on the material representations and omissions of Defendants.

57. At all times herein mentioned, the FLSA was in full force and effect and was binding on the defendants, and each of them. The FLSA required Defendants, and each of them, to refrain from retaliating against employees for participating in protected activity, which includes speaking out against unlawful employment practices and for participating in the investigation of violations of the FLSA.

## FIRST CAUSE OF ACTION
### ESTOPPEL

(Against All Defendants and DOES 1 through 100, inclusive, and each of them)

58. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 57, inclusive, and incorporates each herein by reference.

59. Defendants, and each of them, knew that unwritten exceptions existed to the rule articulated in various memoranda that officers must submit overtime for work periods of less than an hour.

60. Defendants, and each of them, knew that the investigation and Board of Rights hearing for Avila concerned conduct after 2005.

61. Defendants, and each of them, knew that the internal affairs investigation in Avila yielded findings of "no misconduct."

62. Defendants acted in such a way that Avila had the right to believe "no unwritten exceptions" existed to the rule articulated in various memoranda

McNICHOLAS & McNICHOLAS, LLP
10866 WILSHIRE BLVD., SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582 FAX: (310) 475-7871

that officers must submit overtime for work periods of less than an hour <u>or</u> they intended that their conduct would be acted upon by Avila.

63.   Defendants acted in such a way that Avila had the right to believe his investigation and Board of Rights hearing was not limited in scope to post-2005 conduct <u>or</u> they intended that their conduct would be acted upon by Avila.

64.   Defendants acted in such a way that Avila had the right to believe the internal affairs investigation led to findings of misconduct <u>or</u> they intended that their conduct would be acted upon by Avila.

65.   Avila was ignorant of the true facts, including that unwritten exceptions exist to the written memoranda rule that an officer must submit overtime for work periods of less than an hour, that his investigation and Board of Rights hearing was limited in scope to post-2005 conduct, and that the internal affairs investigation into him led to findings of no misconduct.

66.   Avila <u>relied</u> upon Defendants' conduct, to his detriment, by filing a dismissal of the matter *Avila v. Chief William Bratton et al.*, USCD, C.D. Cal., Case Number 09 CV 3053-SJO (FMOx).

## SECOND CAUSE OF ACTION
## UNLAWFUL RETALIATION under FLSA
(Against All Defendants and DOES 1 through 100, inclusive, and each of them)

67.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 66, inclusive, and incorporates each herein by reference.

McNICHOLAS & McNICHOLAS, LLP
10866 WILSHIRE BLVD., SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582  FAX: (310) 475-7871

20

McNICHOLAS & McNICHOLAS, LLP
10866 WILSHIRE BLVD., SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582  FAX: (310) 475-7871

68.   At all times herein mentioned, the FLSA was in full force and effect and was binding upon Defendants, and each of them.   The FLSA required Defendants, and each of them, to refrain from discriminating against, harassing, and/or retaliating against any employee who engaged in protected activity (*i.e.*, testifying in an FLSA proceeding) and to provide each employee with a working environment free from discrimination, harassment, and retaliation.

69.   At all times herein mentioned, Avila was in the protected class of persons who engaged in protected activities contemplated by the FLSA.   Avila is informed and believes that Defendants, and each of them, retaliated against him for providing testimony in the *Maciel* Case and speaking out against unlawful LAPD employment practices that violated the FLSA.

70.   As a consequence of engaging in such protected activities, Defendants and each of them retaliated against Avila and subjected Avila to severe adverse employment actions.

71.   At all times herein mentioned, Defendants, and each of them, had actual and/or constructive knowledge of the harassing, retaliatory conduct levied against Avila by Defendants, fellow employees and superiors.   Moreover, such retaliation was also conducted and/or condoned by Defendants, and each of them.

72.   As a direct, foreseeable, and proximate result of Defendants' harassing, retaliatory conduct, Avila has suffered both general and special damages in the past and present and will continue to suffer such damages in the

future for an unknown period of time.   The exact amount of such damages is unknown to Avila at this time.

73.   As a direct, foreseeable, and proximate result of Defendants' retaliatory conduct, Plaintiff suffered and continues to suffer losses in earnings and other employment benefits, as well as past and future non-economic injury, all to his damage in an amount in excess of the minimum jurisdictional limits of this court, the precise amount of which will be proven at trial.

74.   As a result of Defendants' conduct as alleged herein, Plaintiff has been required to retain counsel to represent him.  Plaintiff is therefore entitled to an award based on the reasonable attorneys' fees necessarily incurred in the preparation and prosecution of this action, pursuant to 29 U.S.C. 216(b).

75.   Also as a result of Defendants' conduct as alleged herein, Plaintiff is entitled to an award of liquidated damages pursuant to 29 U.S.C. 216(b).

76.   While Plaintiff dismissed this identical claim on May 19, 2009 (*Avila v. Chief William Bratton et al.*, USCD, C.D. Cal., Case Number 09 CV 3053-SJO (FMOx)) such dismissal is void, invalid, and must be set aside, or alternatively, Defendants are estopped from asserted such dismissal as a basis to dismiss the instant claim, as a result of their fraudulent representations identified herein.

McNICHOLAS & McNICHOLAS, LLP
10866 WILSHIRE BLVD., SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582  FAX: (310) 475-7871

## THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983, Due Process

(Against All Defendants and DOES 1 through 100, inclusive, and each of them)

77.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 76, inclusive.

78.    Defendants willfully and fraudulently failed to disclose key information relevant to Plaintiff's defense at his Board of Rights: (1) that the Board of Rights concerned only post-2005 conduct; (2) that there were unwritten exceptions to the purported rule that officers must submit overtime for missed Code 7; and (3) that the internal affairs investigation had resulted in findings of "no misconduct."

79.    Defendants also willfully and fraudulently failed to disclose the same key information relevant to Plaintiff's prosecution of his lawsuit against the Defendants.

80.    As a result of Defendants' fraudulent failure to disclose this information, Plaintiff was deprived of Due Process under the 14th Amendment to the United States Constitution, as well as Due Process under Article 1, § 3, of the California Constitution.

81.    As a direct, foreseeable, and proximate result of Defendants' deprivation of Plaintiff's right to due process, Plaintiff has suffered both general and special damages in the past and present and will continue to suffer such

McNICHOLAS & McNICHOLAS, LLP
10866 WILSHIRE BLVD, SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582  FAX: (310) 475-7871

damages in the future for an unknown period of time.  The exact amount of such damages is unknown to Plaintiff at this time.

82.    As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer losses in earnings and other employment benefits all to his damage in an amount in excess of the minimum jurisdictional limits of this court, the precise amount of which will be proven at trial.

## FOURTH CAUSE OF ACTION
## FRAUD & CONCEALMENT

(Against All Defendants and DOES 1 through 100, inclusive, and each of them)

83.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 82, inclusive.

84.    Defendants intentionally misrepresented, both in writing and orally, that the Board of Rights had no time limitation for relevant conduct; they intentionally concealed that in fact it only concerned post-2005 conduct.

85.    Defendants intentionally misrepresented, both in writing and orally, that there were no unwritten exceptions to the purported rule that officers must submit overtime for missed Code 7; they intentionally concealed that, in fact, as Commander Maislin later testified, there were unwritten exceptions.

86.    Defendants intentionally misrepresented, both in writing and orally, that the internal affairs investigation had made some finding of misconduct; they

McNICHOLAS & McNICHOLAS, LLP
10866 WILSHIRE BLVD., SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582  FAX: (310) 475-7871

intentionally concealed that, in fact, it had resulted in written findings of "no misconduct" by Plaintiff.

87.    Defendants had knowledge of the falsity of the above representations and made them with intent to induce reliance.

88.    In direct and proximate response to Defendants knowingly false representations, Plaintiff justifiably relied, which resulted in damage, including his false inducement to dismiss his prior lawsuit against the Defendants.

89.    Defendants are guilty of oppression, fraud, and/or malice, such that Plaintiff is entitled to recover damages for the sake of example and by way of punishing the defendant under California Civil Code § 3294.

## FIFTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATIONS

(Against All Defendants and DOES 1 through 100, inclusive, and each of them)

90.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 89, inclusive.

91.    Defendants, and each of them, owed Plaintiff a duty to exercise reasonable care with the internal affairs investigation of Plaintiff, as well as the Board of Rights proceeding held against him in *absentia*.

92.    Defendants, and each of them, breached their duty of care by misrepresenting, both in writing and orally, that the Board of Rights had no time

McNICHOLAS & McNICHOLAS, LLP
10866 WILSHIRE BLVD, SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582   FAX: (310) 475-7871

limitation for relevant conduct, and by concealing that in fact it only concerned post-2005 conduct.

93.   Defendants, and each of them, breached their duty of care by misrepresenting, both in writing and orally, that there were no unwritten exceptions to the purported rule that officers must submit overtime for missed Code 7, and by concealing that, in fact, as Commander Maislin later testified, there were unwritten exceptions.

94.   Defendants, and each of them, breached their duty of care by misrepresenting, both in writing and orally, that the internal affairs investigation had made some finding of misconduct, and by concealing that, in fact, it had resulted in written findings of "no misconduct" by Plaintiff.

95.   In direct and proximate response to Defendants' negligent misrepresentations and concealments, Plaintiff justifiably relied, which resulted in damage, including his false inducement to dismiss his prior lawsuit against the Defendants.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Avila prays that judgment be entered in his favor and against defendants as follows:

1.   For general and special damages in an amount in excess of the minimum jurisdictional limits of this Court;

McNICHOLAS & McNICHOLAS, LLP
10866 WILSHIRE BLVD., SUITE 1400, LOS ANGELES, CA 90024
TEL: (310) 474-1582  FAX: (310) 475-7871

2.   For compensatory damages including lost wages and lost employee benefits, together with interest on said amounts, according to proof;

3.   For a money judgment for mental pain and anguish and emotional distress;

4.   For a money judgment for physical pain, injury, anguish and distress, as the same have resulted from emotional stress and distress;

5.   For exemplary damages from the non-governmental defendants, as allowed by law;

6.   For reasonable attorney fees, as allowed by law;

7.   For liquidated damages, as allowed by law;

8.   For an award of interest, including prejudgment interest, at the legal rate, as allowed by law;

9.   For costs of suit incurred herein, as allowed by law; and

10.  For such other and further relief as the Court may deem just and proper.

Dated: February 11, 2011

Respectfully submitted,

McNICHOLAS & McNICHOLAS, LLP

By: _____
Matthew McNicholas
Cameron Fredman

Attorneys for Plaintiff
LEONARD AVILA

COMPLAINT

# DEMAND FOR JURY TRIAL

Plaintiff Leonard Avila hereby demands a trial by jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure and by the Local Rules of this Court.

Dated: February 11, 2011         Respectfully submitted,

McNICHOLAS & McNICHOLAS, LLP

By:

Matthew McNicholas
Cameron Fredman

Attorneys for Plaintiff
LEONARD AVILA

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Mariana P. Pfaelzer and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV11- 1326 MRP (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

The United States District Judge assigned to this case will review all filed discovery motions and thereafter, on a case-by-case or motion-by-motion basis, may refer discovery related motions to the Magistrate Judge for hearing and determination

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

ORIGINAL

McNICHOLAS & McNICHOLAS, LLP
Matthew S. McNicholas (SBN 190249)
Cameron P. Fredman (SBN 256034)
McNicholas & McNicholas, LLP
10866 Wilshire Blvd., Suite 1400
Los Angeles, CA 90024   Tel. (310) 474-1582

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

LEONARD AVILA,

PLAINTIFF(S)

v.

LOS ANGELES POLICE DEPARTMENT, CITY OF
LOS ANGELES, COMMANDER STUART
MAISLIN, and DOES 1 through 25, inclusive
                                    10

DEFENDANT(S).

CASE NUMBER

**CV11-01326**MPP(PJWx)

**SUMMONS**

TO:    DEFENDANT(S): _____

_____

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _McNicholas & McNicholas, LLP_____, whose address is _10866 Wilshire Blvd., Suite 1400, Los Angeles, CA  90024_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

FEB 1 1 2011

Dated: _____

Clerk, U.S. District Court

By: _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                    SUMMONS

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| LEONARD AVILA | LOS ANGELES POLICE DEPARTMENT, CITY OF LOS ANGELES, COMMANDER STUART MAISLIN, and DOES 1 through 25, inlusive. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| McNICHOLAS & McNICHOLAS, LLP    Tel:  (310) 474-1582<br>10866 Wilshire Blvd., Suite 1400<br>Los Angeles, CA 90024 | Matthew S. McNicholas (SBN 190249)<br>Cameron Fredman (SBN 256034) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No  ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Complaint for Estoppel and Retaliation in Violation of the Fair Labor Standards Act and Violation of Due Process (42. U.S.C. § 1983)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☑ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

**CV11-01326**

FOR OFFICE USE ONLY:   Case Number: 09-cv-3053 SJO (FMOx)

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a). IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☐ No ☑ Yes
If yes, list case number(s):  09-cv-3053 SJO (FMOx)

VIII(b). RELATED CASES:  Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s):  Romney v. Chief William Bratton et al., U.S.D.C. Case No. 09-cv-3048 VBF (PLAx)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☑ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☑  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, State of California | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☑  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, State of California | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER):  Cameron Fredman   Date February 11, 2011

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |